(53 South. 654.)

No. 18,516.

SMITH v. DARDENNE, Registrar.

In re SMITH.

(Nov. 28, 1910.)

*(Syllabus by the Court.)*

1. ELECTIONS (§ 103*)—REGISTRATION—OFFICE OF REGISTRAR.

Under section 22, Act No. 98 of 1908, the registrar of voters in a country parish cannot keep his office elsewhere than "at the courthouse."

[Ed. Note.—For other cases, see Elections, Cent. Dig. § 101; Dec. Dig. § 103.*]

2. ELECTIONS (§ 111*)—REGISTRATION—APPLICATION.

Applications for registration are official papers, open to inspection at all times by the public. Id. § 27.

[Ed. Note.—For other cases, see Elections, Cent. Dig. § 107; Dec. Dig. § 111.*]

Application by D. C. Smith for writ of mandamus to T. W. Dardenne, Registrar. Writ denied, and relator applies for certiorari and mandamus. Judgment vacated, and peremptory writ of mandamus issued.

Walter Lemann, J. H. Pugh, and E. N. Pugh, for relator. Borron & Wilbert, for registrar.

LAND, J. Relator applied to the district judge of the parish of Iberville for a mandamus to compel the registrar of said parish to permit the relator to inspect the papers, books, and records in his office, provided the same does not interfere with registration, and to compel the said registrar to open and keep his office in the courthouse of said parish.

The petition alleged that the registrar kept his office, with his records, books, and papers, in his livery stable in the town of Plaquemine, and had refused to permit the relator to examine two blank applications for registration which had been filled in by one Arthur F. Gasquet, who had been denied

registration on account of alleged errors in his application.

The respondent answered that he intended to remove his office to the courthouse as soon as an office was provided and equipped for that purpose, and that he had acted in perfect good faith in establishing temporarily his office at his place of business, which was as convenient to the public as the courthouse.

Respondent further answered that relator, with J. H. Pugh, Esq., visited his office on or about September 19, 1910, and that Mr. Pugh demanded permission to examine the blanks filled out by the said Gasquet, which demand was refused by the respondent, but that no such demand was made by or for the relator; that the said blanks had been filled out incorrectly by said Gasquet, who, having failed to qualify as a voter, was in consequence refused registration; and that under the law he is not required to preserve such blanks, that they form no part of the records of his office, and that they are preserved by him as his private papers and for his own protection.

Respondent further answered that, if said blanks are official papers, he was justified in refusing to permit the parties named to inspect the same, because he had been informed and believed that they, well knowing that Gasquet was not qualified to register, had been engaged in training and coaching him how to fill out the registration blanks, all of which was confirmed by the affidavit of Gasquet annexed to respondent's answer, and that respondent believed that the motive of relator and Pugh for demanding to see said blanks was to ascertain what errors had been made by the said Gasquet, in order to aid them to further train and coach him, and cause to be registered one not possessing the qualifications of a voter.

The case was tried, and there was judgment ordering the respondent to remove his office to the courthouse of the parish, as soon as the police jury shall have equipped and furnished an office therein for his use, but otherwise rejecting relator's demand.

It appears from the evidence that the relator and Mr. Pugh had given Gasquet instructions as to the proper manner of filling out registration blanks, and, on being informed that Gasquet had been denied registration, went to the office of the registrar, and requested leave to inspect the blanks that had been filled by Gasquet. This request was refused.

The relator and Mr. Pugh were acting in the interest of Gasquet. In fact, Gasquet authorized Mr. Pugh to institute suit to compel his registration as a voter, and made affidavit to the petition. A short time after the petition was filed, the suit was dismissed by order of Gasquet.

The evidence shows that since January 1, 1909, the respondent has kept his office in his livery stable. He has never applied to the police jury for a room in the courthouse. Act No. 98 of 1908, § 22, provides that the registrar "shall keep his office at the courthouse." Section 27 of the same act provides that:

"The books, papers and records in the offices of each registrar throughout the state shall at all times be open to inspection by the public and copies of the same may be procured, provided same does not interfere with registration."

The judgment below tacitly licenses the use of respondent's livery stable as his office until such time as the police jury shall have equipped and furnished an office in the courthouse for the use of the respondent. It is obvious that the mandate of the law forbids the registrar from keeping his office elsewhere.

Applications for registration are required by the Constitution and laws of this state as prerequisite for registration, and constitute essential parts of the records and papers in the office of the registrars of voters.

An application for registration is as much a part of the record as a petition in a judicial proceeding.

It is therefore ordered that the judgment below be vacated, and it is further ordered that a peremptory writ of mandamus issue, directed to T. W. Dardenne, registrar of voters of the parish of Iberville, commanding him to keep his office at the courthouse of said parish, and also commanding him to permit D. C. Smith, the relator, to inspect the books, papers, and records in his office, provided the same does not interfere with the registration of voters.